UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RODNEY A. HUBBARD,

                Petitioner,                Case No. 2:11-cv-191

v.                                          Honorable Gordon J. Quist

JEFFREY WOODS,

                Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. On March 27, 2005, Petitioner was convicted of first-degree murder and felony firearm. Petitioner was sentenced as a fourth habitual offender to life without parole, as well as two years imprisonment for the felony firearm conviction. Prior to sentencing, Petitioner filed a motion for a new trial, which was denied because the issues raised by Petitioner were either addressed during the trial or had been waived.

Petitioner subsequently filed an appeal in the Michigan Court of Appeals, asserting that he was denied the effective assistance of trial counsel and that the trial court abused its discretion in denying his motion for a new trial. The Michigan Court of Appeals affirmed Petitioner's convictions on January 25, 2007. *See People v. Hubbard*, Michigan Court of Appeals No. 263300, docket #23. Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, which was denied on December 28, 2007.

In December of 2008, Petitioner filed a motion for relief from judgment in the trial court asserting that his trial counsel was ineffective in failing to request a voice analysis of a

recording before trial and that the trial court should have declared a mistrial.  The trial court denied Petitioner's motion for relief from judgment on his claim that his trial counsel was ineffective in failing to have a voice recording analyzed, and on his claim that the trial court erred in denying his request for an adjournment to investigate or obtain a witness in the field of voiceprint analysis.  In addition, with regard to Petitioner's claim that appellate counsel was ineffective in failing to raise trial counsel's ineffective assistance with respect to the voiceprint evidence, the court noted that appellate counsel did raise this issue and it was decided against Petitioner.  The trial court then directed the prosecutor to address the cause and prejudice requirements of MCR 6.508(D)(3) as they relate to Petitioner's other claims regarding the testimony of Odie Miller, the court's failure to declare a mistrial, and whether Petitioner's convictions were against the great weight of the evidence. *See* 12/23/08 order, docket #29.  The Prosecutor filed a response.  *See* docket #30.  The trial court held a hearing on the matter on April 21, 2009, and ultimately denied Petitioner's motion.  *See* Motion for Relief from Judgment Hearing Transcript, pp. 13-26, docket #22, and 4/22/09 Order, docket #31.

Petitioner filed a delayed application for leave to appeal the denial of his motion for relief from judgment in January of 2010.  Petitioner's motion was denied pursuant to MCR 6.508(D) by the Michigan Court of Appeals on April 27, 2010.  *See People v. Hubbard*, Michigan Court of Appeals No. 296200, 4/27/10 Order.  Petitioner then filed a motion for reconsideration, which was denied by the Michigan Court of Appeals on June 9, 2010.  *See People v. Hubbard*, Michigan Court of Appeals No. 296200, 6/9/10 Order, docket #26.  Plaintiff then filed an application for leave to appeal in the Michigan Supreme Court, which was denied on April 28, 2011, for failure to establish entitlement to relief pursuant to MCR 6.508(D).  In his appeal to the Michigan Supreme Court, Petitioner asserted that he was seeking to present new scientific exculpatory evidence consisting of

- 2 -

the findings of an expert in voiceprint analysis.  In addition, Petitioner asserted ineffective assistance of trial and appellate counsel, insufficient evidence, and that the trial court failed to allow the main prosecution witness to testify regarding the voice on the tape.  *See* docket #26, *People v. Hubbard*, Michigan Supreme Court No. 141518 and Pro Per Application for Leave to Appeal. The Michigan Supreme Court also denied Petitioner's motion to remand.  *Id.*

On May 18, 2011, Petitioner filed the instant habeas corpus action, asserting seven grounds for relief, as follows:

I.    Petitioner is entitled to a new trial where he was denied effective assistance of counsel at trial where there was an improper trial investigation and where counsel failed to request a due diligence hearing prior to trial.

II.   Petitioner is entitled to a new trial where the trial court abused its discretion in denying the motion for a new trial.

III.  Where [Petitioner] presents new scientific exculpatory evidence consisting of the findings of an expert in voice-print analysis that the voice on the audio tape recording is not [Petitioner's] voice, this Court should grant leave to appeal and remand this case back to the trial court with orders for the court to conduct an evidentiary hearing based on this new scientific evidence.

IV.   [Petitioner] is entitled to relief where trial counsel admitted on the record to his ineffectiveness in not following the proper procedures for obtaining an expert in voice-print analysis and the trial court's failure to declare a mistrial denied [Petitioner] his due process right to a fair trial.

V.    [Petitioner] is entitled to relief where there is insufficient evidence to convict him of first-degree murder where new evidence now shows that the voice on the tape recording is not his.

VI.   Where the trial court failed to allow the prosecution's main witness, Odie Miller, to testify to and identify whether the audio recording contained [Petitioner's] voice on the tape, the trial court denied [Petitioner] his due process right to a fair trial.  In addition, the trial court denied [Petitioner] his due process right to a fair trial where the court refused to allow the defense to obtain an expert in the field of scientific voice-print analysis to determine whether the tape recording contained [Petitioner's] voice.

VII.    Appellate counsel violated [Petitioner's] Fourteenth and Sixth Amendment rights where counsel failed to raise "significant" and "obvious" issues on his appeal of right.

Respondent filed an answer to the petition (docket #11) stating that the grounds should be denied because they lack merit and / or have been procedurally defaulted.

On March 12, 2012, Petitioner filed his first motion to stay (docket #35), as well as a response to Respondent's answer to the habeas corpus petition.  In Petitioner's March 12, 2012, response to Respondent's answer to the habeas corpus petition (docket #34), he restates his claims as:

I.      WHETHER MR. HUBBARD'S TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL?

II.     WHETHER HABEAS RELIEF IS WARRANTED ON MR. HUBBARD'S SECOND AND THIRD CLAIMS, AND MAY AN EVIDENTIARY HEARING IN THIS COURT BE NECESSARY?

III.    WHETHER HABEAS RELIEF IS WARRANTED ON MR. HUBBARD'S THIRD, FOURTH, FIFTH, AND SIXTH CLAIMS BECAUSE THE CLAIMS ARE COGNIZABLE, MERITORIOUS AND NOT PROCEDURALLY DEFAULTED?

IV.     WHETHER A CERTIFICATE OF APPEALABILITY WOULD BE APPROPRIATE IN THIS CASE?

The motion to stay was granted on March 30, 2012 (docket #36).  Petitioner sought leave to file a successive motion for relief from judgment in the trial court, which was denied because the asserted evidence was deemed not newly discovered and not admissible at trial (docket #45).  Thereafter, the stay was lifted and Petitioner filed an amended brief in support of his petition for writ of habeas corpus relief.

In Petitioner's amended brief, he asserts that the court should consider his habeas corpus claims because he can show good cause and prejudice for the procedural default of his claims.

- 4 -

On October 5, 2013, Petitioner filed a second motion for stay and abeyance, asserting that the ruling in *People v. William Craig Garrett*, Michigan Supreme Court No. 145594, could greatly impact Petitioner's claim regarding new evidence of actual innocence based on wrongful voice identification and seeking a stay until a decision on that case.  On April 17, 2014, the court denied Petitioner's motion for a stay as moot, noting that the Michigan Supreme Court denied relief in *People v. William Craig Garrett*, Michigan Supreme Court No. 145594, on December 20, 2013.

Upon review and applying the AEDPA standards, I find that Petitioner's application for habeas corpus relief lacks merit.  Accordingly, I recommend that the petition be denied.

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA).  *See Penry v. Johnson*, 532 U.S. 782, 791 (2001), *cert. denied, Texas v. Penry*, 126 S. Ct. 2862 (June 12, 2006). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  The AEDPA has "drastically changed" the nature of habeas review.  *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d

at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). "Yet, while the principles of 'clearly established law' are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (Oct. 9, 2007). The inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001).

A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 410.

Where the state court has not articulated its reasoning, the federal courts are obligated to conduct an independent review to determine if the state court's result is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented. *See Harrington v. Richter*, ___ S. Ct. ___, 2011 WL 148587, at *9 (Jan. 19, 2011) (citing with approval *Harris*, 212 F.3d at 943 n.1). Where the circumstances suggest that the state court actually considered the issue, including where a state court has issued a summary affirmance, the review remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *Harrington*, 2011 WL 148587, at *9; *Harris*, 212 F.3d at 943. However, where the state court clearly did not address the merits of a claim, "there are simply no results, let alone reasoning, to which [the] court can defer."

- 6 -

In such circumstances, the court conducts *de novo* review.  *McKenzie*, 326 F.3d at 727 (limiting *Harris* to those circumstances in which a result exists to which the federal court may defer); *see also Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *Maples v. Steagall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1);  *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Ago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989). Applying the foregoing standards under the AEDPA, I find that Petitioner is not entitled to relief.

As noted above, Petitioner claims that he was denied the effective assistance of trial counsel.  In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered

sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court recently has observed, while "'[s]urmounting *Strickland*'s high bar is never an easy task,' . . . [e]stablishing that a state court's application was unreasonable under § 2254(d) is all the more difficult." *Harrington v. Richter*,131 S. Ct. 770, 788 (2011) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 1485 (2010)). Because the standards under both *Strickland* and § 2254(d) are highly deferential, "when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S. Ct. at 788 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). In those circumstances, "[t]he question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

In this case, the state prosecution arose from the March 1999 shooting death of Raymond Davis.

> The crime remained unsolved for several years. In 2004, [Petitioner]'s cellmate contacted the police and reported that [Petitioner] had bragged about committing the murder. The police subsequently provided the cellmate with a digital recording device, and defendant allegedly confessed to the crime during a recorded conversation with the cellmate. The recorded conversation was played for the jury at trial.

*See People v. Hubbard*, Michigan Court of Appeals No. 26330, docket #23.

- 8 -

In the opinion affirming Petitioner's conviction, the Michigan Court of Appeals noted that Petitioner's claim that his trial counsel was ineffective in failing to have the digital recording analyzed prior to trial, failing to timely request the prosecutor's assistance in locating two missing witnesses, and failing to request a cautionary instruction concerning the limited use of other acts evidence had not been raised in a motion for a new trial or evidentiary hearing.  *Id.* at *1.  The Michigan Court of Appeals noted that trial counsel requested an adjournment in order to have the recording analyzed to determine whether the voice could be identified as belonging to Petitioner. In addition, counsel conceded that his failure to have this done prior to trial was erroneous.  *Id.* at *2.  The Michigan Court of Appeals determined:

> Thus, the first prong of the test for ineffective assistance of counsel is satisfied. However, defendant has not satisfied the prejudice prong. At trial, Thomas Alti of TGA Recordings testified that he was hired to enhance the quality of the recording by filtering out background noises. According to Alti, however, it was not possible to positively match the voice on the recording to defendant's voice. When defense counsel requested an adjournment, he informed the court that he had located two experts who *might* be able to analyze whether the voice on the recording was defendant's, but counsel admitted that he had not spoken to either. The court denied the request for an adjournment, but stated that it would reconsider its decision if counsel provided the court with more information. There is no indication in the lower court record that additional information was ever provided to the court. Additionally, defendant has failed to make any further showing that an analysis of the recording might demonstrate that the voice on the recording was not defendant's voice. Absent such a showing, there is no basis for concluding that further analysis may have made a difference in the outcome of the trial. Therefore, reversal is not warranted.

*Id.*

In the order denying Petitioner's second motion for relief from judgment, the trial court stated:

In this successive motion for relief from judgment the [Petitioner] has secured an expert witness on voiceprint analysis in his effort to overturn his prior murder conviction.  The report attached to the motion suggests that the voice on the recording was, in the evaluator's opinion, not that of the [Petitioner]. [Petitioner] seeks to have this motion heard because this report is "new" evidence.

"Newly discovered evidence" is evidence that requires the following four factors to be present:

(a)    That the evidence is newly discovered,

(b)    That the evidence is not merely cumulative,

(c)    That the evidence is such as to render a different result probable on retrial,

(d)    That the defendant could not with reasonable diligence have produced it at trial.  *See People v. McAllister*, 16 Mich App 217, 218, 167 NW2d 600 (1969).

The tape recording is not "new" and neither is [Petitioner]'s argument that it was not him on the tape.  The jury heard the tape and the [Petitioner]'s denial in court during his trial.  Also, [Petitioner] had opportunities to have the tape reviewed before trial and was given the option by this Court during trial to contact experts regarding the tape.  Even if the analysis could not have been done during trial, this was available after trial and was the subject of all of [Petitioner]'s appeals.  Additionally, the [Petitioner] did not act with reasonable diligence, as required, by bringing this to the Court's attention seven years after conviction.

Next there is an issue of admissibility of this "new" evidence in court.  The inadmissibility of voiceprint analysis was noted by Justice Markman in his concurrence to deny leave.  He said:

I write separately to observe that this Court, in an appropriate case, should revisit its conclusion in *People v. Tobey*, 401 Mich 141, 148, 257 NW2d 537 (1977), that "voiceprint evidence is inadmissible because it has not 'achieved general scientific acceptance as a reliable identification device . . . .'"  Since *Tobey* was decided, 11 other states have addressed the admissibility of voiceprint evidence; five states have admitted such evidence, *see e.g., State v. Gortarez*, 141 Ariz 254, 686 P2d 1224 (1984).  *Coon* is the only decision of a state supreme court that has addressed voiceprint evidence under the test

of *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 US 579, 113 S Ct 2786, 125 LE2d 469 (1993), which is now the relevant standard in Michigan under MRE 702. *People v. Hubbard*, 480 Mich 898 (2007).

There has not been another case to challenge the holding in *Tobey*, also a drug case, so it remains the law in Michigan (overruled, on different grounds).  The defendant, in *Tobey*, on two separate occasions, sold heroin to an undercover police agent.  In order to set up the buy, the agent would call the defendant and record the conversation.  These recordings were then subjected to voiceprint analysis to be introduced at trial.  The results of the voiceprint analysis corroborated the fact that it was defendant's voice on the recordings.  Defendant objected to the introduction of the recordings and voiceprint analysis at trial.  The trial court permitted the evidence to be shown to the jury.  Defendant was subsequently convicted.  On appeal, the Supreme Court reviewed voiceprint technology and dismissed its admissibility in other states as it had not yet been deemed admissible in Michigan.  The Court stated:

> Voiceprint evidence has not achieved general scientific acceptance as a reliable identification device, and therefore the trial court erred in admitting the voiceprint evidence.  We echo the statement of the California Supreme Court that this 'decision is not intended in any way to foreclose the introduction of voiceprint evidence in future cases *** when there is demonstrated solid scientific approval and support of (this) new method' of identification. *People v. Kelly*, 17 Cal 3d 24, 138 Cal Rptr 144 (1976).

The decision in *Tobey* has not been reconsidered, therefore, voiceprint analysis is still considered inadmissible in Michigan courtrooms.  So even if this Court were to agree that this report by [Petitioner]'s expert is "newly discovered" evidence, it would not be admissible in Court.

*See People v. Hubbard*, Berrien County Trial Court No. 2004-404393-FC, pp. 3-5, docket #45.

The trial court concluded that Petitioner's evidence is not new, and that voiceprint analysis is not an accepted scientific practice in Michigan and pursuant to *Tobey*, would not be admissible in court.  For these reasons, the trial court found no reason to allow a second motion for

relief from judgment and denied Petitioner's request. *Id.* at pp. 5-6. In the opinion of the undersigned, the opinions of the Michigan Court of Appeals and the trial court both reasonably conclude that Petitioner cannot show prejudice for his attorney's failure to obtain expert voiceprint analysis of the recording prior to trial.

Trial counsel conceded that his failure to wait until just before trial to ask for the prosecutor's assistance in locating two missing witnesses was erroneous. However, because the expected testimony of the two witnesses would merely have corroborated the testimony of other witnesses who appeared at trial, Michigan Court of Appeals found that this failure did not deprive Petitioner of a substantial defense. *Id.*

Accordingly, the Michigan Court of Appeals' decision on Petitioner's claim of ineffective assistance of trial counsel did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner further asserts that the trial court abused its discretion in denying his motion for a new trial and that it should have declared a mistrial. The Michigan Court of Appeals noted that a new trial may be granted for any reason that would support reversal on appeal. *People v. Hubbard*, Michigan Court of Appeals No. 26330, p. *3.

> Defendant first argues that a new trial was warranted because the trial court erroneously denied his request for an adjournment to allow the recording to be analyzed.
>
> In deciding whether to grant a continuance, the trial court should consider whether the defendant: (1) asserted a constitutional right; (2) had a legitimate reason for asserting the right; (3) had been negligent; and (4) had requested previous adjournments. *People v. Charles O Williams,* 386 Mich. 565, 578; 194 NW2d 337 (1972); *People v.*

*Lawton,* 196 Mich.App 341, 348; 492 NW2d 810 (1992). Defendant must also show that he was prejudiced by the court's denial of his motion. *Lawton, supra* at 348; see also *Williams, supra* at 574-575.

In this case, defendant was asserting a constitutional right (to present a defense) and had a legitimate reason for asserting that right (his belief that the voice on the recording was not his, and counsel's failure to have the recording analyzed before trial). There is no indication of previous adjournments attributable to defendant. However, defense counsel admitted that he was negligent in failing to have the recording analyzed before trial. More importantly, defendant failed to come forward with any evidence that an analysis of the recording could demonstrate that the voice on the recording was not his. Because defendant cannot show that he was prejudiced by the trial court's denial of his motion for a continuance, the trial court did not abuse its discretion in denying defendant's motion for a new trial on this basis. *Williams, supra.*

*Id.*

The Michigan Court of Appeals' decision on the trial court's denial of Petitioner's motion for a new trial did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  For the same reason that Petitioner is not entitled to a new trial, his claim that the trial court should have declared a mistrial is also without merit.

Petitioner asserts that where he has presented new scientific exculpatory evidence consisting of the findings of an expert in voiceprint analysis which shows that his voice was not on the audio recording, the evidence presented at trial was insufficient to support his conviction.  However, it does not appear that Petitioner presented a sufficiency of the evidence claim to either the Michigan Court of Appeals or the Michigan Supreme Court.  Therefore, Petitioner's ability to present this issue in his habeas corpus petition is barred by the doctrine of procedural default.

- 13 -

When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state court enforced the rule so as to bar the claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster v. Adams*, 324 F.3d 423, 436-37 (6th Cir. 2003); *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001). In determining whether a state procedural rule was applied to bar a claim, a reviewing court looks to the last reasoned state-court decision disposing of the claim. *See Ylst*, 501 U.S. at 803; *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).

If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52. The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

In this case, Petitioner asserts that his appellate counsel caused the procedural default by failing to have the voiceprint analysis done prior to his appeal and by failing to raise this claim on direct appeal.  In addition, Petitioner claims that he is actually innocent of the murder and that, in light of the new evidence, he would not have been found guilty.

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *Id.*  Issues of credibility may not be reviewed by the habeas court under this standard.  *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993).  Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law.  *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Id.*  Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "'the law commands deference at two levels in this case:  First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan [trial court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA.'"  *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)).

For a due process challenge to the sufficiency of the evidence, under § 2254(d)(1), a writ of habeas corpus may be granted if the court concludes that no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Warren v. Smith*, 161 F.3d 358, 360 (6th Cir. 1998) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Under § 2254(d)(2), the court presumes correct the factual findings made by the state court, *see* § 2254(e)(1), unless the petitioner rebuts the presumption with clear and convincing evidence. *Warren*, 161 F.3d at 360-61.

In the September 13, 2012, order denying Petitioner's motion for reconsideration of the denial of his request to file a second motion for relief from judgment, the trial court stated, "[Petitioner] argues that this Court made a palpable error because the opinion relied on whether or not the voice print analysis was admissible in its decision, rather than focusing on his innocence." *See* docket #47, 9/13/12 Order of the Berrien Co. Trial Court, p. 1. The trial court noted that the case being relied on by Petitioner did not hold that admissibility concerns could be overlooked. *Id.* at 2. In addition, the court stated that the decision to deny the motion to file a subsequent motion for relief from judgment was not based solely on the admissibility of the evidence. *Id.*

> First, this evidence was not "new." Defendant raised the argument at trial that the voice on the tape was not his. He presented his argument to the jury regarding this tape. Defendant failed to mention in his motion and brief that there was other testimony and admissions that the voice on the tape was that of the Defendant. Specifically, prior to trial, Defendant sent a letter to Judge Butzbaugh. In it he said:
>
>> Now they are trying to use a tape that they made of me and another inmate talking. Your Honor, in this – in this tape, I only talked about my November 3rd case. If any – if – and if mentioned to my knowledge, I only told Odie Miller, the other inmate, that I was told about a murder that another inmate mentioned – that another inmate mentioned my name. (Trial Transcript pp. 1026-27)

- 16 -

Defendant clearly admits it was him on the tape.  Then on April 21, 2009, a hearing regarding his first Motion for Relief from Judgment was held.  The Court read from a letter Defendant sent to the Prosecuting Attorney James A. Cherry.  In it Defendant states:

> First of all, it's a tape that is being used against me, but the tape is not revealing the truth of the matter. The case that me and Odie Miller talked about was the case that happened in 2002 that I got sentenced for in November 2 - - 3rd, 2003. (p10)

Again, there is no denying that the Defendant admitted in this letter that the voice on the tape was his, which squarely goes against his claim of innocence.

Beyond the Defendant's written admissions, there is other testimonial evidence that he admitted guilt to these charged crimes.  At trial, Odie Miller, the other voice on the tape, testified that the Defendant was a bunkmate of his at jail.  (Trial Transcript p 566) He testified that Defendant told him about these murders before he tape recorded him for police (Trial Transcript pp. 566-67, 577-84) Miller then told Detectives about Defendant's confessions and he had enough specific information that the police found him to be credible.  (Trial Transcript p. 423)

Additionally, Defendant, at a pre-sentence investigation interview with Probation Agent Mark Sebenar, admitted that he had a dispute with the decedent over money he allegedly had stolen from the Defendant providing a motive for this murder.  (Trial Transcript p730) The Probation Agent testified that the Defendant admitted to pulling a gun and shooting in the direction of the victim's house. (Trial Transcript p730)

Finally, Defendant testified at trial that he shared a cell with Miller and he admitted to talking about this victim with Miller, however he said it was not to confess to a crime but to explain why his son was telling others in the jail that he had committed this murder.  (Trial Transcript pp. 1018-1019) Defendant also under oath admitted that he talked with Miller the night Miller was wired by police.  (Trial Transcript p979)

All of this evidence taken together contradict Defendant's claim of "new" evidence that it was not him on the tape recording.  Therefore, this asserted "new" evidence would not overwhelmingly prove his innocence.

Second, this Court found that Defendant did not act with diligence in getting this tape reviewed. It has been seven years since his conviction and even longer since the murder took place. Witnesses' memories have faded, evidence has deteriorated, and the evidence and evaluation technique regarding voice analysis was available all these years. This is not new evidence nor is it overwhelming proof of his innocence.

Finally, Defendant argues that this Court denied his request based upon applying a standard of *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 US 579; 113 S Ct 2786; 125 L Ed2d 469 (1993) which is no longer the standard in Michigan concerning scientific evidence. This Court did not overlook the fact that *Daubert* is no longer the standard in Michigan, it merely noted that the Court of Appeals and Supreme Court in Michigan specifically denied his claims of new evidence based upon the standard that was in effect at the time of his trial and appeal. Additionally, this Court noted that the higher courts have declined to review voice print analysis under *Daubert* or any other standard. Therefore, this Court did not commit error as counsel suggested when it stated the fact that such testimony is not admissible in Michigan.

*See* docket #47, 9/13/12 Order of the Berrien Co. Trial Court, pp. 3-5.

First-degree murder is a specific intent crime that is defined under state law as requiring proof that a defendant intended to kill and that the intent was deliberate and premeditated. MICH. COMP. LAWS § 750.316; *see also People v. Anderson*, 531 N.W.2d 780, 786 (Mich. Ct. App. 1995). First-degree murder elements of premeditation and deliberation may be inferred from all of the facts and circumstances surrounding the incident, including (1) the parties' prior relationship, (2) the actions of accused both before and after crime, and (3) the circumstances of the killing itself. *Id.*; *People v. Haywood*, 530 N.W.2d 497, 503 (Mich. Ct. App. 1995).

As noted by the state court, Petitioner sent letters to Judge Butzbaugh and Prosecuting Attorney Cherry admitting that it was his voice on the tape. Petitioner's bunkmate Odie Miller testified that Petitioner told him about the murder before he tape recorded Petitioner for police. When Miller told police about Petitioner's statements, he had enough specific information that police

found him to be credible.  Petitioner admitted to a Probation Agent that he had a dispute with the

victim over money that the victim stole from Petitioner, and that he had pulled a gun and shot in the

direction of the victim's house.  Petitioner also admitted discussing the crime with his bunkmate and

talking to his bunkmate on the night that the recording was made for police.

        The facts provide sufficient evidence for a rational trier of fact to find that Petitioner

formed a premeditated and deliberate intent to kill and that he did in fact kill the victim.  Therefore,

Petitioner's claim that his conviction is not supported by sufficient evidence lacks merit, and habeas

relief must be denied on this issue.

        Finally, with regard to Petitioner's claim regarding the prosecutor's lack of due

diligence in attempting to find two missing witnesses, the Michigan Court of Appeals stated:

> Defendant further argues that a new trial was warranted because the prosecutor did not exercise due diligence in attempting to find the two missing witnesses. We disagree.
>
> With regard to the prosecutor's alleged lack of due diligence, defendant confuses the standard applicable to a finding that a witness is unavailable within the meaning of MRE 804, with the standard applicable to requests for assistance under MCL 767.40a(5). MRE 804(a)(5) requires a showing that the *proponent* of the evidence exercised due diligence in attempting to procure the missing witness's attendance. See *People v. Bean,* 457 Mich. 677, 683-684; 580 NW2d 390 (1998). Once that showing is made, the proponent can attempt to show that other evidence (in lieu of the witness's testimony) should be admitted under one of the exceptions listed in MRE 804(b).
>
> Conversely, under MCL 767.40a(5), a defendant is entitled to reasonable assistance in locating a missing witness. See *People v.. Long,* 246 Mich.App 582, 585; 633 NW2d 843 (2001). If the prosecutor fails to provide such reasonable assistance, the defense may be entitled to a missing witness instruction. See *People v. Perez,* 469 Mich. 415, 418-421; 670 NW2d 655 (2003).
>
> In this case, defendant sought to introduce hearsay evidence (police reports) in lieu of the missing witnesses' live testimony. Thus, MRE 804(a)(5) initially applied, requiring a showing of due diligence. But

defendant appears to have confused the two standards and, instead of evaluating whether *defendant* (the proponent of the evidence) exercised due diligence in attempting to procure the witnesses' attendance, the court and the parties addressed the question of whether the *prosecutor* exercised due diligence. The prosecutor's efforts were relevant only to defendant's alternative argument that the trial court should give a missing witness instruction because the prosecutor did not provide sufficient assistance to locate the missing witnesses. Defendant repeats this error on appeal.

To the extent that defendant's argument can be interpreted as addressing MCL 767.40a(5), we conclude that defendant was not entitled to the prosecutor's assistance because he failed to make a timely request under the statute. Regardless, we are satisfied that the assistance provided by the prosecutor was sufficient to satisfy the prosecutor's burden under statute. Thus, defendant was not entitled to a missing witness instruction.

In sum, defendant has failed to show that the trial court committed an error that would warrant reversal. Therefore, the trial court did not abuse its discretion in denying defendant's motion for a new trial. *Lemmon, supra.*

*Id.* at *3-4.

In the opinion of the undersigned, the Michigan Court of Appeals' decision on this issue did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied.

In addition, if petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate

of appealability should be granted.  A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).   *Murphy*, 263 F.3d at 467.  Consequently, the undersigned has examined each of petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  For the reasons set forth in detail above, the undersigned concludes that reasonable jurists could not find that a dismissal of each of petitioner's claims was debatable or wrong.  Therefore, the undersigned recommends that the court deny petitioner a certificate of appealability.

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:  May 29, 2014

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).